## LEFFERTS v. STATE.

1. The testimony of a person in regard to his own signature is not evidence of a grade superior to the testimony of a witness acquainted with the handwriting of such person.

2. The defendant in a criminal case produced written complaints, and, being a witness, testified that such complaints were signed by the prosecutor in his presence; the court refused to receive the same thus proved, and required the prosecutor in such complaints to be called to prove his own signature; such prosecutor was produced and was a witness hostile to the defence—*Held*, such judicial action was error and entitled the defendant to a reversal of the judgment. A bill of exceptions is amendable.

On error to Quarter Sessions of Middlesex. The indictment charged a justice of the peace with having obtained money of one Margaret McCarten by falsely pretending that "three several complaints, in writing, under oath, had been filed before him, charging her with having sold to sundry persons intoxicating drinks, she having no license; such complaints being the commencement of prosecutions to recover certain penalties denounced by the city ordinances; and that the said justice obtained from the said Margaret the penalty and costs in one of such prosecutions. The indictment then negatived the filing and existence of such complaints.

Argued at June Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff in error, *A. V. Schenck.*

For the defendant, *J. Kearny Rice.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The state alleged that the defendant, being a justice of the peace, had obtained money from the person named in the indictment by falsely pretending that there were three complaints against such person filed with him

by virtue of a municipal ordinance that denounced penalties. against persons selling intoxicating liquors without license. It was charged that by this fraudulent fiction the defendant had been paid, by the party thus pretended to be incriminated, one of such penalties. The indictment then averred that no such complaint had ever been made before the defendant.

At the trial, in the course of his defence, the defendant produced his docket and likewise three papers that purported to be such complaints as were referred to in the indictment, and being examined on his own behalf as a witness, stated that these documents were signed and sworn to by the person whose name was subscribed to them as prosecutor. The complaints thus proved were offered in evidence and were rejected by the court, on the ground that the best evidence of their authenticity had not been produced, such evidence, in the judicial estimation, being that of the prosecutor who had made such complaints and had put his name to them. This view was plainly erroneous. The testimony of the man who signed the documents, with respect to the genuineness of his signature, was not of a higher grade of evidence than the testimony of a man who had seen him make such signature or who was acquainted with his writing and deposed as to his opinion. The rule adopted by the court would require, in proving a promissory note or other unattested writing, the production of the maker of the instrument, to the exclusion of all other evidence, as primary proof. The rejection of these papers, under the conditions stated, was erroneous.

It is true that the papers in question were subsequently admitted in evidence, but such introduction was allowed only after the defendant had been obliged, by the ruling of the court, to call the person who had subscribed the complaints, and who was a witness hostile to the defence, and who by his testimony had cast suspicion upon the papers referred to. The substance of his testimony was to the effect that he could. not tell whether the signatures were his or not ; that he had never knowingly made such complaints, as he was friendly with the person against whom they purported to have been

made.  It is manifest that such testimony, impairing as it did the essential fact of his defence, was highly prejudicial to the defendant on the merits of the case.    That the court announced that the defendant might treat this witness as a hostile witness did not repair the wrong : he might not have been prepared to show that the witness had made statements out of court inconsistent with his testimony, or that his reputation for veracity was bad, even if such circumstances existed.    The judgment must be reversed.

The question of the amendability of the bill of exceptions is not necessarily involved in the present decision.    The bill was amended at the instance of the state, and the case has been decided in favor of the defendant on the basis presented in the amended bill.    In the absence of such emendation the facts would have made a case somewhat stronger for the defence.    Our decision being adverse to the state taking the matter in this stronger aspect in favor of the prosecution, it is not necessary for the court to consider it in its weaker aspect.  Nevertheless, as the matter is of importance in practice, and as it has been examined by the court, it has been thought proper to express our view upon the subject.

In this case the bill of exceptions, as originally signed and sealed by the Court of Quarter Sessions, stated that the three complaints already mentioned were rejected when offered by the defence, but it failed to state, as was proper, that they were afterwards admitted and placed before the jury.    The state, giving notice to the defendant of the motion, applied to the Court of Quarter Sessions to amend the bill, so as to make it embrace the matter inadvertently omitted.    The amendment was made and the legality of that act was challenged by the counsel of the defendant in his argument before this court.  But the denial of the right to amend a bill of exceptions does not seem to be countenanced by any rule of practice or principle of jurisprudence.    If such a power does not exist, such a condition of affairs is anomalous, and does not accord with the usual course when error has been discovered in the other parts of judicial procedure.    Originally, at common law, it

Lefferts v. State.

would seem as though every step of a suit, from its commence-
ment to its close, was alterable by the court, for it required an
act of parliament, in the time of Edward I., to prevent the
exercise of such power with respect to judgments that had
been formally enrolled. But this statutory restriction went
no further than that, and from that era to the present almost
all the other proceedings in a suit at law have been amended
in the most liberal manner by the English courts. The same
practice has prevailed in this commonwealth, as is exemplified
by a train of decisions. Thus, a faulty verdict, although ac-
credited by a *postea* signed by the judge, has been always
deemed amendable, and the record has been remitted to that
end by a court of error. *Delaware, Lackawanna and West-
ern R. R. Co.* v. *Toffey*, 9 *Vroom* 525. In the case of *Apgar's
Adm'r* v. *Hiler*, 4 *Zab.* 808, this course was taken with a
judgment that had been improperly entered. There are many
similar and analogous cases in our reports, to which it is un-
necessary to refer.

This being the condition of the law with respect to the cor-
rection of judicial proceedings in these important respects, it
seems difficult to suggest any reasonable ground on which it
can be claimed that a bill of exceptions is exempt from such a
beneficial control. If a mistake has been found in a bill of
exceptions, why should it not be expunged and the statement
rectified? In the case, in the Exchequer Chamber, of *The
Mersey Docks and Harbour Board*, 7 *H. & N.* 339, this ques-
tion was argued, and Chief Justice Cockburn, in the course of
the argument, suggested as a reason why the power perhaps
did not exist this consideration—he said: "If a judge is at
liberty to amend a bill of exceptions after he has sealed it, it
might happen that the bill of exceptions, when sealed, con-
tained the real directions given to the jury, and any misdirec-
tion might be avoided by altering the bill of exceptions and
inserting the direction which ought to have been given." But
if there is a probability that there would, in some cases, be
danger that a judge would thus vitiate a bill of exceptions, is
there not a similar danger with reference to the other parts

of the proceedings, and if the faculty of rectification is to be withheld on the ground indicated in the former class of cases, ought it not to be withheld in every case? May not the unworthy judge falsify the *postea* or the judgment as well as the bill of exceptions? In point of fact, no part of the proceedings appears to be less exposed to falsification than this latter document, for it relates to matters taking place in open court, and which have been committed to writing and judicially attested. The allegation that error has intervened when none has intervened could in such case be made neither with plausibility nor with impunity. All judicial powers are liable to be abused, but such possible abuse has never prevented their delegation. The authority now being considered is a prerogative highly important to a just administration of the law. That a litigant should lose his judgment from the inadvertence of his opponent's counsel in misstating, or in omitting to state, some necessary fact in the bill of exceptions, such inadvertence being unnoticed by the judge, would be a hardship that could not occur in any legal system containing proper adjustments and safeguards. Our scheme of laws is not deformed by the presence of such an imperfection. The bill of exceptions is correctible as all other procedures in a suit are correctible. Even if such power of rectification were not inherent in the general rules of judicial practice, it would necessarily be held to have been introduced into our legal methods by the provision contained in the one hundred and thirty-eighth section of our Practice act, which declares that it shall be lawful for the court or judge to amend all defects and errors in any proceeding in civil causes, whether there is anything in writing to amend by or not.